## Case No. 14,537.
### UNITED STATES v. BASS.
[Brunner, Col. Cas. 418; 2 4 City H. Rec. 161.]
Circuit Court, D. New York.　1819.

PIRACY—FOREIGN COMMISSION AS A DEFENSE.

It is a sufficient defense to an indictment for piracy that the defendant, an American citizen, show a commission from a foreign government, though issued in blank, and afterwards filled up by the person intrusted with it.

The prisoner was indicted under the eighth section of the act of congress, passed in 1790 (1 Gord. Dig. p. 62 [1 Stat. 113]), for that he, being a citizen of the United States, to wit, of Richmond, in the state of Virginia, on the 15th day of June, 1818, with force and arms, upon the high seas, to wit, off the Peak of Pico, out of the jurisdiction of any particular state, then being on board a certain schooner or vessel then belonging

---

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reported by Albert Brunner, Esq., and here reprinted by permission.]

and appertaining to a certain citizen or citizens of the United States to the jurors unknown, did piratically and feloniously set upon, attack, board, break, and enter a certain merchant ship or vessel called the San Joao Baptista, a ship of certain persons to the jurors unknown, and did assault certain mariners, whose names are to the jurors unknown, and did put them in corporal fear and danger of their lives, and the said vessel, her tackle, apparel, and funiture, of the value of twenty thousand dollars, a quantity of sugar in boxes, of the value of twenty thousand dollars, and a quantity of coffee in bags, of the value of one thousand dollars, being on board said vessel, the goods and chattels of persons unknown, in the care and possession of said mariners, did piratically and feloniously steal, take, and carry away, against the peace, etc., and contrary to the form of the statute.

Mr. Tillotson, Dist. Atty., and Hoffman, Bunner, and Stoughton, for the United States.

D. B. Ogden and J. K. Scott, for prisoner.

Mr. Tillotson opened the case on behalf of the United States.

Joseph Smith, a witness on behalf of the prosecution testified, that in the month of April, 1818, he was at the five islands in the West Indies, which islands are dependent on St. Bartholomews. The witness, in the capacity of a clerk, was on board a vessel called the Republicana, commanded by Captain Chase; and a schooner under American colors, then without a name, commanded by the prisoner, arrived there, and after lying there a few days, the prisoner came in company with Captain Mason on board the Republicana, and Mason applied to Captain Chase for a copy of the commission of Artegas, under which the Republicana sailed. By the direction of Chase the witness made a copy of the commission, and signed it with the name of Artegas, but did not affix a seal like that on the original. This copy was delivered by Captain Chase to Mason, and an agreement was then made between them, but not in presence of the prisoner, that Mason should allow Chase ten per cent on all captures which might be made. The witness sailed from the five islands in the Republicana to St. Barts; and, in the month of October or November following, saw the prisoner there, who came as a passenger in the American brig Edward from Baltimore. The witness having heard from Captain Chase and Captain Clement Catherel, who, on the decease of Chase, took command of the Republicana, that the prisoner had refused to pay the ten per cent, had a conversation with him on the subject, when he did not deny the agreement, but said that Captain Mason would not pay the ten per cent, and that it was all privateering. The prisoner admitted to the witness that he commanded the Constantia, that he had been on a cruise two months,

and had, under the commission and colors of Artegas, captured the San Joao Baptista, a Portuguese ship. The witness understood from the crew that the vessel which came to the five islands under American colors was called the Constantia.

John I. Sickels, on being sworn, testified, that at the office of Mr. Stoughton, in which the witness was a clerk, the prisoner, about the time he was arrested and brought before Judge Livingston, admitted to the witness that he, the prisoner, was an American citizen, of Richmond, Virginia; that in June, 1818, he commanded the Constantia, which he purchased as a prize in the West Indies for six hundred dollars; and that he captured the Joao Baptista and sent her into St. Barts as a Portuguese vessel, and not as a prize.

The prosecution having rested, the counsel for the prisoner submitted to the court whether the cause ought to go to the jury; inasmuch as the only evidence against the prisoner, relative to his capturing the vessel, was derived from his confession which taken together amounts to this, that he captured her under a good commission. The confession cannot be separated, but must be taken together.

The counsel for the prosecution contended that the facts in the case, independent of the confession, fully supported the proposition that he captured the vessel under the commission forged by Smith; and that although the rule relative to a confession was that the whole should be heard, yet the whole is not to be believed. The court decided that there was sufficient testimony adduced to warrant the prosecution in resting the case.

The counsel for the prisoner hereupon opened the defense and produced a commission to the prisoner as a lieutenant in the navy of Artegas, dated 15th November, 1817; and also a commission for his vessel, the Constantia, together with instructions, purporting to have been signed by Artegas, and sealed. These were dated in April, 1818.

Adam Pond, on being sworn as a witness for the prisoner, testified that he was acquainted with the signature and seal of Artegas, and was fully confident, though he did not see the commissions executed by that chief, that they were of his seal and signature. In the month of January, 1818, the witness was at the office of Mr. Halsey, the American consul at Buenos Ayres, and saw these commissions, signed and sealed, pass through his hands and his office, as the agent of the government of Artegas. The witness then commanded a Buenos Ayres vessel, and that government was at war with Artegas. In the month of February the witness, having received the commissions from Halsey, with the name of the vessel, the Constantia, filled in, and the name of the captain and number of guns left blank, but with directions from him to fill them as occasion should require, proceeded from Buenos Ayres in a vessel called the Serapo, and arrived at the five islands in April; and on the first or second of May, delivered the commissions to the prisoner, who agreed to allow the witness twelve and a half per cent on all captures made by the schooner, which he said he had then lately purchased. Previous to the arrival of the witness, the prisoner had procured a copy of a commission from Captain Chase, under which he was about to sail; but the witness having a genuine commission, the prisoner received it; and on his arrival at St. Barts, the witness saw the same commission on board of his vessel.

The counsel for the defendant here rested, and the counsel for the prosecution submitted to the court whether an American citizen has a right to enter into the service of a foreign power, and make captures on the high seas of vessels belonging to another power, at amity with the United States. And, also, whether this government of Artegas, a government of but a day, could, consistent with the laws of nations, issue blank commissions under the agency of a consul of the United States at Buenos Ayres.

LIVINGSTON, Circuit Justice, in the decision of the court, said, that he was aware that many abuses have existed and still do exist in relation to captures made of Spanish and Portuguese vessels, by color of authority emanating from the governments of the independent provinces in South America. With regard to the question whether an American citizen could enter into foreign service, and make captures of vessels belonging to a power at amity with the United States, it was sufficient to say that this has not been prohibited by any act of congress. And with regard to the question relative to the sufficiency of blank commissions, it was well known that Mr. Genet, while minister from the French republic to the government of the United States, pursued the same practice, to a considerable extent. Here the principal question is, whether this commission, so put on board this vessel by an agent of the Artegas government, is to be considered a nullity. In the opinion of the court, in a case of life or death, this commission is sufficient to exculpate the prisoner from the charge laid in the indictment.

The jury immediately acquitted the prisoner.